**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Tanya Wooten, as the Administrator of the Estate of Cherise Northington, and, Sharon Smith,<br><br>       Plaintiffs,<br><br>   v.<br><br>Taking Care of Our Seniors, Inc., and Beverly Davis,<br><br>       Defendants. | Case No. 1:17-cv-05570<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Cherise Northington[1] and Sharon Smith bring this action under the

Fair Labor Standards Act (FLSA), the Illinois Wage Payment and Collection Act

("Wage Act"), and the Illinois Minimum Wage Law (IMWL). They name as

defendants their former employer Taking Care of Our Seniors, doing business as

Heal to Thrive, and its only shareholder Beverly Davis. Before the Court are cross

motions for summary judgment. Because Plaintiffs believe that some genuine

disputes of material fact remain, they move only for partial summary judgment. For

the reasons explained in detail below, Defendants' motion for summary judgment

[160] is denied. Plaintiffs' motion for summary judgment [166] is granted in part

and denied in part.

---

[1] Cherise Northington passed away shortly after this action was filed. Tanya Wooten (Northington's daughter) has been substituted on her behalf as the administrator of Northington's estate. Dkt. 35. For clarity, the Court will refer to Cherise Northington as the Plaintiff in this case, rather than Tanya Wooten.

## I.    Background

Defendant Taking Care of Our Seniors, doing business as Heal to Thrive, provides care for elderly customers in their homes. Dkt. 177, ¶ 3. Defendant Beverly Davis was and remains the sole shareholder of Taking Care of Our Seniors. Dkt. 177-1, ¶ 2. Plaintiff Cherise Northington worked as a caregiver for Taking Care of Our Seniors from December 18, 2015, until September 21, 2016. Dkt. 165, ¶ 6. Plaintiff Sharon Smith similarly worked as a caregiver for Taking Care of Our Seniors from September 9, 2017, until June 2, 2018. *Id.* ¶¶ 15–16. Smith and Northington worked 24-hour shifts, which included time for sleeping and meal breaks. Based on this employment relationship, Plaintiffs bring this wage dispute action under the Fair Labor Standards Act and similar state laws. The lack of admissible evidence in this case provides little for the Court to go on, as will be made clear below.

## II.   Analysis

On summary judgment, the movant has the burden of showing that "no genuine dispute as to any material fact" exists and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). No "genuine" dispute exists if a court would be required to grant a Rule 50 motion at trial. *Id.* at 250–51. The Court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). "Summary

judgment is only warranted if, after doing so, [the Court] determine[s] that no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

When, as here, the Court is presented with cross-motions for summary judgment, each movant independently "bears a respective burden to show no issue of material fact" remains and that it is entitled to judgment as a matter of law. *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416–17 (7th Cir. 2019); *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015) ("On review of cross-motions for summary judgment, we view all facts and inferences in the light most favorable to the nonmoving party on each motion."). In other words, the Court considers the defendant's motion viewing the facts and reasonable inferences in the light most favorable to the plaintiff. Then, the Court puts on the blinders and considers the plaintiff's motion viewing the facts and reasonable inferences in the light most favorable to the defendant.

### a. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all of Plaintiffs' claims. Dkt. 160. In Count I, Plaintiffs bring a claim under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216, on the theory that Defendants failed to pay them (or at least timely pay them) for the overtime hours that they worked. Dkt. 124-1, ¶¶ 43–46. Defendants argue that the FLSA does not apply to Plaintiffs' employment because they worked as homecare providers. Dkt. 162, at 2. As Defendants point out, several

exceptions exist to the FLSA. One of those exceptions is for certain domestic service employees:

> [29 U.S.C. §§ 206 and 207 do not apply to] any employee employed on a casual basis in domestic service employment to provide babysitting services *or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves* (as such terms are defined and delimited by regulations of the Secretary).

29 U.S.C. § 213(a)(15) (emphasis added). Defendants barely developed this argument. Plaintiffs did not meaningfully respond. *See* Dkt. 172. Defendants' argument lacks meaningful citations to case law, or explanation and development of their argument. Furthermore, despite being given leave, dkt. 164, Defendants failed to file a reply brief to assert waiver, resulting in waiver of waiver. *United States v. Waldrip*, 859 F.3d 446, 450 (7th Cir. 2017). Instead, the Court must determine only whether Defendants have met their initial burden.

The Secretary of the Department of Labor promulgates regulations to clarify the requirements of the Fair Labor Standards Act. The Secretary's regulation explains what the term "companionship services" means:

> (a) As used in section 13(a)(15) of the Act, *the term companionship services means the provision of fellowship and protection* for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself. The provision of fellowship means to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events. The provision of protection means to be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being.
> (b) *The term companionship services also includes the provision of care if the care is provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the*

> *total hours worked per person and per workweek.* The provision of care
> means to assist the person with activities of daily living (such as
> dressing, grooming, feeding, bathing, toileting, and transferring) and
> instrumental activities of daily living, which are tasks that enable a
> person to live independently at home (such as meal preparation, driving,
> light housework, managing finances, assistance with the physical
> taking of medications, and arranging medical care).

29 C.F.R. § 552.6 (emphasis added). Defendants contend that Plaintiffs were

homecare providers with no professional training and that because they "babysat"

clients that were "older or infirm," they must meet the definition of companionship

services under the meaning of the statute. Dkt. 162, at 2.

But section (a) of the regulation defines the term companionship services as

"the provision of fellowship and protection." And after defining those terms, the

regulation continues in section (b) by explaining that companionship services

includes the provision of care only if that caretaking does not exceed twenty percent

of the total hours worked. The regulation specifically explains that assistance with

daily living activities falls within the definition of provision of care. And though

Defendants' argument referenced this section of the regulation, they failed to

present any evidence that Plaintiffs spent less than twenty percent of their time on

assistance with daily living activities. Thus, the Defendants have failed to meet

their burden of showing that the exception to the FLSA applies in this case.

Indeed, another court in this district came to the same conclusion even when

presented with more evidence. In *Eun Hee Kim v. Byun*, No. 16-cv-9138, 2019 U.S.

Dist. LEXIS 36045, at *16 (N.D. Ill. Mar. 6, 2019), the parties agreed that the

employees performed some provision of care duties, and they even estimated how

5

much time was spent on those tasks. Nevertheless, the court still determined that a factual dispute remained. "A trial is the only proper way to resolve this factual disparity." *Id.* at \*16–17. Here, the Court has much less evidence. Indeed, Defendants have not offered any evidence of how much time Plaintiffs spent on the provision of care versus the provision of fellowship and protection. Thus, the Court must deny Defendants' motion for summary judgment on this argument.

### b. Defendants' Exhibits

The rest of Defendants' motion for summary judgment offers no developed arguments. The brief contains no further citation to legal authority to support any arguments and most of Defendants exhibits were not properly submitted to the Court. As presented, they are inadmissible.

When presenting summary judgment arguments to the Court, parties are required to support those arguments with evidence. Indeed, the Seventh Circuit often refers to the summary judgment phase of litigation as the "put up or shut up" moment. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). In filing the present motion for summary judgment, Defendants submitted thirteen exhibits. *See* dkts. 161, 182. Plaintiffs challenge the admissibility of several of them. Dkt. 172, at 15; Dkt. 174. The Court will address these evidentiary disputes in turn.[2]

---

[2] Plaintiffs never use the term "authenticity" when challenging the admissibility of the documents. Instead, Plaintiffs object to the documents as hearsay and then further state that the documents are "not supported by any testimony." *See, e.g.,* Dkt. 174. The Court does not believe that Plaintiffs are asserting an authenticity objection to using these documents in the summary judgment motions. After the 2010 amendments to Rule 56,

Defendants submitted a two-page letter from Joy Garab. Dkt. 161-9 (Exhibit E). The letter appears to be an expert report. It lists Garab's qualifications, her findings, and the information she based those findings on. It then explains how much she was paid and is signed and dated, though not under penalty of perjury. Defendants also referred to Garab as "an expert in payroll, general accounting, bookkeeping, and payroll preparation with over thirty-five years of experience." Dkt. 174, ¶ 16; *see also* Dkt. 178, at 6 (referring to the Garab as an expert).

Plaintiffs object to the admissibility of the letter on the grounds that it is a hearsay document because it is not supported by any testimony. Dkt. 174, ¶ 16. On the same grounds, Plaintiffs also challenge the admissibility of what Defendants refer to as Joy Garab's "Expert Report supplement," which is a spreadsheet purporting to show an accounting of payments made to Sharon Smith. *Id.* ¶ 17; Dkt. 161-7 (Exhibit C). Plaintiffs also object on the same grounds to Defendants' Exhibit E1, which is forty-three additional pages of spreadsheets. Dkt. 174, ¶ 19; Dkt. 161-10. These objections were made in Plaintiffs' response to Defendants Local Rule 56.1 statement of facts, and Defendants have not responded to the objections.

In *Scott v. Edinburg*, the Seventh Circuit considered the admissibility of an expert report at the summary judgment stage. 346 F.3d 752, 759 (7th Cir. 2003). The expert report was introduced without a supporting affidavit. Because no affidavit was included, the report was inadmissible hearsay and could not be considered at summary judgment. *Id.* The same is true here. Defendants have not

---

authenticity objections to documents used in summary judgment motions are unlikely to prevail. *See Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017).

submitted an affidavit from Garab along with her letter. Thus, it cannot be considered an admissible expert report. And it cannot qualify as a declaration under 28 U.S.C. § 1746 because it does not substantially follow the prescribed form and is not signed under penalty of perjury. Furthermore, Defendants' Exhibits C and E1 are likewise unsupported by any authenticating affidavit.[3] Thus, Defendants' Exhibit C (Dkt. 161-7), Defendants' Exhibit E (Dkt. 161-9), and Defendants' Exhibit E1 (Dkt. 161-10) are inadmissible hearsay, and the Court cannot consider them on summary judgment.

The problem continues. Exhibit B (Dkt. 161-2) is purportedly the employment contract between Taking Care of Our Seniors and Cherise Northington. Defendants describe Exhibit B1 (Dkt. 161-3) as wage records. And Exhibit B2 (Dkt. 161-4) is a litany of photocopied receipts that appear to be money transfers. Exhibit B4 (Dkt. 161-5) is three pages of handwritten notes. Exhibit B5 (Dkt. 161-6) is a spreadsheet that purportedly shows payments made to Northington. Exhibit D (Dkt. 182-1) is 232 pages and contains a multitude of items, including handwritten pages (some of which are not legible) and type-printed documents purporting to show payment information for Sharon Smith, though Defendants include no context or supporting affidavit.[4] Again, Plaintiffs objected to the admissibility of these exhibits. Indeed,

---

[3] After Plaintiffs raised the hearsay objection based on the lack of an affidavit or declaration, Defendants did not then move to file an affidavit, which may have cured the defect. *See DG &G, Inc. v. FlexSol Packaging Corp.*, 576 F.3d 820, 826 (8th Cir. 2009) (allowing later filed affidavit to cure lack of affidavit when expert report originally filed with the summary judgment motion).

[4] Furthermore, Defendants cited Exhibit D in their Local Rule 56.1 statement of fact without including a page number. The exhibit is 232 pages. This is one example, but Defendants failed to cite page numbers for lengthy exhibits on several occasions. This

these exhibits are all inadmissible for the same reason. Defendants have failed to include affidavits establishing that the documents fall into a hearsay exception (e.g., the business record exception).

Exhibit B3 contains five videos from the house of one of Northington's clients.[5] Defendants cited the videos for the proposition that Northington was abusive toward her clients and because the videos purportedly discussed her argument that she was not receiving the proper amount of sleep time. The Court has viewed the videos and they contain no audible statements that relate at all to the question of sleep time. The videos merely show a dispute between Northington and an elderly female client that became physical in both directions. That, however, is not relevant to the question of whether she was paid for the hours she worked. And even if the videos were relevant to the question whether Northington received the proper sleep breaks, that question isn't addressed by Defendants' motion. Thus, the videos are irrelevant for the purpose of the pending motion because they have no bearing on a fact of consequence at issue. Fed. R. Evid. 401.

Thus, even if Defendants had developed any meaningful arguments based on these exhibits, the Court would still deny summary judgment because the exhibits, as presented, are not admissible. Furthermore, Defendants do not meaningfully

---

practice violates Local Rule 56.1: "Each asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The Court may disregard any asserted fact that is not supported with such a citation." Local Rule 56.1(d)(2); *see Gabryzak v. Aurora Bull Dog Co.*, 427 F. Supp. 3d 994, 999 (N.D. Ill. 2019) (discussing the lack of page number citation in a 193-page exhibit).
[5] Exhibit B3 was provided to the Court on a CD. The Court has reviewed the videos contained on that CD in camera.

develop an argument regarding Plaintiffs' state law claims. They merely conclude

that they are entitled to summary judgment either because they believe they are

entitled to judgment on the federal claim or because the evidence shows they paid

Plaintiffs what they were owed. Because the arguments are undeveloped and

uncited and because Defendants' proffered evidence is inadmissible, their motion for

summary judgment is denied.

### c. Plaintiffs' Motion for Summary Judgment

Plaintiffs Smith and Northington move the Court for partial summary

judgment. Dkt. 166. Critically, Plaintiffs do not move for summary judgment on the

question of whether they were afforded their break time. Dkt. 181, at 5 ("Plaintiffs

agree that the breaks are disputed facts and should not be subject to any Summary

Judgment motion."). Plaintiff Smith also does not move for summary judgment on

the issue of whether Defendants paid her first and last paychecks. Dkt. 181, at 6.

These claims remain at issue in this action because the Court has already denied

Defendants' motion for summary judgment.

Instead, Plaintiffs' motion focuses on the allegations that (1) Defendants

failed to pay Plaintiffs within the thirteen-day limit required under the Illinois

Wage Act; (2) Plaintiff Smith was paid for thirteen-hour shifts, rather than the

sixteen hours she alleged agreed to, and (3) Defendants shorted Plaintiffs'

paychecks or paid them late in violation of the FLSA. Furthermore, Plaintiffs seek

findings that Defendant Beverly Davis is individually liable for the conduct

complained of under both federal and state law and that the alleged conduct was willful.

Notably, Defendants failed to meaningful respond to most of these arguments. Indeed, Defendants' response brief is remarkably similar to their own motion for summary judgment. Often, it is a verbatim recitation. Reiterating a party's original argument is no substitute for a well-formed rebuttal to an opposing argument. And where Defendants include argumentation, those arguments lack meaningful citations to the record or legal authority. Nevertheless, rather than find waiver, the Court must determine whether Plaintiffs have met their burden. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

### 1. The Wage Act's Thirteen-Day Requirement

Plaintiff Sharon Smith moves for summary judgment on her claim that Defendants violated the Illinois Wage Payment and Collection Act ("Wage Act"), 820 ILCS 115/1 *et seq.*, by failing to pay her the appropriate amount within thirteen days. Dkt. 167, at 9–10. Indeed, the "purpose of the Wage Act is to provide Illinois employees with a cause of action for the timely and complete payment of earned wages or final compensation." *Watts v. ADDO Mgmt., LLC*, 2018 IL App. (1st) 170201, ¶ 12. The Wage Act defines wages as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the parties." 820 ILCS 115/2. To prove a violation of the Wage Act, the plaintiff "needs to establish a manifestation of mutual assent from *both* parties about the purported terms of [the] employment agreement." *Kramer v. Am. Bank & Trust Co., N.A.*, No.

11

11-cv-08758, 2018 U.S. Dist. LEXIS 168761, at *16 (N.D. Ill. Sept. 30, 2018) (quoting *Schneider v. Ecolab, Inc.*, No. 15-cv-01033, 2015 U.S. Dist. LEXIS 37440, at *15 (N.D. Ill. Mar. 25, 2015) (emphasis in original)).

Smith contends that Defendants have at least admitted to making payments late, by three years and four months. Dkt. 167, at 9. Defendants do not offer any argument in response. Indeed, their brief does not even mention the Wage Act's thirteen-day requirement. Dkt. 178. The parties agree that Defendants admitted to shorting her paycheck, which effectively amounts to a multi-year delay in payment. Dkts. 168, 177, ¶¶ 66–68. The only disagreement in the parties' Local Rule 56.1 statements is the amount that was later paid. That dispute, however, prevents the Court from determining damages at this stage.[6] Therefore, the Court grants Smith's motion for judgment on her Wage Act claim, but the amount of damages cannot be determined based on the materials now before the Court.

### 2. Sixteen Hour Shifts

Sharon Smith next moves the Court summary judgment on her claim under the Wage Act that Defendants failed to pay her based on a sixteen-hour per shift agreement for all work done in Cook County. Dkt. 167, at 10–11. In support, Smith argues that Defendants twice offered her sixteen hour per shift wages, and that she accepted their offers both times. *Id.* at 10. Defendants respond that no one in their employ ever received sixteen hour per shift wages. Dkt. 178, at 3. In their responses

---

[6] The parties Local Rule 56.1 statements of fact relied almost entirely on materials the Court has already held inadmissible for the purposes of the pending summary judgment motions. Nevertheless, Beverly Davis admitted to paying Sharon Smith late at least once in her affidavit. Dkt. 165, ¶ 23.

to the statements of fact on this issue, Defendants further argue that the purported

agreements did not contain such an offer, and any language referencing a sixteen-

hour shift payment was merely an example. Dkt. 177, ¶¶ 27–32.

The Court cannot grant Smith's motion for summary judgment on this claim.

These types of claims under the Wage Act require plaintiffs to prove the terms of

their employment relationship. *Kramer*, 2018 U.S. Dist. LEXIS 168761, at *16. But

Smith has presented no argument that the purported agreement was ever formed.

She merely concludes that the memorandum that bears her signature but not

Defendants', dkt. 168-4, at 22–24, created an agreement. Because that question has

not been resolved, the Court cannot at this time reach the ultimate question of

whether Defendants failed to pay her money to which she was entitled.

### 3. Fair Labor Standards Act

The FLSA creates several requirements that employers must follow. It sets

the minimum wage for covered employees at $7.25 per hour. 29 U.S.C. §

206(a)(1)(B). It also requires employers to pay overtime for any hours worked above

forty hours per week. Those overtime hours must be paid at least at the rate of one

and one-half times the employee's regular rate.[7] § 207(a). The FLSA also provides

for a private right of action to recover damages, reasonable attorney's fees, and

costs. § 216(b).

---

[7] The Illinois Minimum Wage Law includes the same overtime requirement, so the two
statutes are often analyzed together when addressing overtime disputes. *Guzman v. Laredo
Sys.*, No. 10-cv-01499, 2022 U.S. Dist. LEXIS 59936, at *22 (N.D. Ill. Mar. 31, 2022).

Plaintiffs ask the Court to apply burden shifting based on the absence of reliable records as established in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). Dkt. 167, at 2; *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (reiterating the burden shifting rule set out in *Anderson v. Mt. Clemens*).

In *Anderson*, the Supreme Court recognized that the employer is in the best position to "produce the most probative facts concerning the nature and amount of work performed" and that the FLSA places a burden on the employer to maintain proper records of employee "wages, hours, and other conditions." 328 U.S. at 687. Indeed, the plain text of the FLSA requires that employers "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c). Thus, the Supreme Court determined that a plaintiff has met his burden if that plaintiff proves that he "performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. If the plaintiff makes that initial showing, then the burden shifts to the employer to produce evidence sufficient to negate that reasonable inference. *Id.* "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

Thus, Plaintiffs must first prove that they have performed work for which Defendants did not properly compensate them. They must further provide evidence sufficient to show by reasonable inference the total amount of damages Defendants

14

owe them. If Plaintiffs can meet that burden, then Defendants will have failed to rebut that reasonable inference of damages because Defendants failed to establish the admissibility of their proffered evidence.

To meet their initial burden, Plaintiffs assert that Defendants admit violations of the FLSA—failing to pay Smith and Northington the appropriate wages and failing to pay those wages on time. Dkt. 167, at 6–9. First, Northington asserts that Defendants have admitted to failing to pay her overtime.[8] Dkt. 167, at 6. Indeed, Beverly Davis admitted in her deposition that she failed to pay Northington her overtime wages on three separate occasions, though she asserts that she eventually paid the proper wages. Dkt. 168-3, at 3. For the week of December 18, 2015, Northington's paycheck was short $67.29. Dkt. 168, ¶ 14. The paycheck issued on February 5, 2016, was short $39.25. *Id.* ¶ 18. And the paycheck issued on May 27, 2016, was short $80.06. *Id.* ¶ 16. Thus, Davis failed to timely pay Northington's overtime wages on at least three occasions, totaling $186.60.

Second, Sharon Smith asserts that her checks were short on two occasions. But the cited portion of Beverly Davis' deposition does not clearly support the proposition that she admitted to shorting Smith's paychecks. Dkt. 168-2, at 55.

---

[8] Defendants object on two grounds to this statement of fact, which can be found at Dkt. 168, ¶ 10. First, they contend that Northington failed to list any claims in response to the supplementary interrogatory. Defendants cite no authority for this objection. Second, they contend that because Northington is now deceased, she is unable to testify. The Court is unaware what Defendants are implying because direct testimony by a plaintiff is obviously not the only form of evidence courts can consider. Furthermore, Defendants deny the statement fact but cite to exhibits the Court has already deemed inadmissible (Exhibits B1 and B2). Dkt. 177, ¶ 10. Additionally, this objection makes little sense because Defendant Beverly Davis' deposition testimony unequivocally explains that she at least initially failed to pay.

Instead, Davis' declaration asserts that Smith was paid less after a conversation with the client because Davis believed that Smith did not actually work those hours. Dkt. 177-1, ¶¶ 14, 17. On the other occasion, Davis lessened Smith's paycheck after a conversation with the client in which she purportedly confirmed that some of the hours at issue were worked by another caretaker. *Id.* ¶ 17. On this point, Smith has failed to meet her initial burden. But the Court has already held that Defendants failed to pay Smith on time in violation of the Wage Act's thirteen-day requirement. And the FLSA also requires employers to pay wages on time. *Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001); *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993). Because Defendants did not timely pay Smith's due wages, she has met her burden of establishing the Defendants violated the FLSA.

Although Plaintiffs have shown that Defendants violated the FLSA, their initial burden is two-fold; they must also provide sufficient evidence to allow the Court to reasonably approximate damages. *Anderson*, 328 U.S. at 687; *Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008). Neither Smith nor Northington have produce evidence sufficient to allow the Court to approximate those damages. They present no argument regarding the amount of damages owed for late payments, and they have only moved for partial summary judgment, so the Court cannot determine the total amount of damages anyway. Thus, although Defendants have violated the FLSA, the Court cannot at this stage use the burden-shifting formula under *Anderson* to approximate Plaintiffs' damages.

16

#### 4. Individual Liability

Plaintiffs next contend that Defendant Beverly Davis as the sole shareholder of Taking Care of Our Seniors is an employer under the meaning of the FLSA and should, therefore, be held individually liable. Dkt. 167, at 11–12. Defendants do not respond to this argument. Dkt. 178. The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In determining whether the defendant is an employer under the FLSA, courts analyze the totality of the circumstances and the "economic reality" of the working relationship. *Berger v. NCAA*, 843 F.3d 285, 290 (7th Cir. 2016). Some relevant factors include (1) whether the individual had the authority to hire and fire the plaintiffs, (2) whether the individual acted as the plaintiffs' supervisor, (3) whether the individual determined the plaintiffs' pay rate, and (4) whether the individual was responsible for maintaining the plaintiffs' employment records. *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 62 (2d Cir. 2018).

Here, the economic reality is undisputed. Davis made that clear in her affidavit. She was the sole shareholder of Taking Care of Our Seniors. Dkt. 165, ¶ 2. And she was not an absent shareholder; she was Plaintiffs' managing supervisor. *Id.* ¶ 3. Thus, because Davis was the sole owner and acted as Plaintiffs' direct supervisor, she was their employer under the meaning of the FLSA. *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986) (explaining that a sole owner is an employer if that person is either involved in day-to-day operations or has "some direct responsibility for the supervision of the employee"); *Acosta v. Special Police Force*

17

*Corp.*, 371 F. Supp. 3d 60, 74 (D.P.R. 2019) (finding "especially compelling" the fact

that the individual was the sole shareholder); *Rojas v. Splendor Landscape Designs,*

*Ltd.*, 268 F. Supp. 3d 405, 410 (E.D.N.Y. 2017) (finding individual liability because

the defendant was the sole owner and operator and so there were "no other

individuals who could possibly be responsible for the operational control" of the

company); *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 275 (D. Md.

2014) (finding individual liability because the defendant was the sole owner and

controlled the daily operations of the business).

Therefore, because Defendants failed to respond to this argument and

because Beverly Davis' affidavit establishes that she was the sole owner and

operator of Taking Care of Our Seniors, the Court holds that she is individually

liable for Plaintiffs' damages in this case.[9]

### 5. Willful Conduct under the FLSA

Plaintiffs further contend that Defendants willfully violated the strictures of

the FLSA. Dkt. 167, at 13–14. If true, Plaintiffs would be entitled to an additional

year of back wages. *Lee v. BK Schaumburg Inc.*, No. 18-cv-3593, 2020 U.S. Dist.

LEXIS 115467, at *17 (N.D. Ill. July 1, 2020). Once again, Defendants failed to

respond to this argument. Dkt. 178. Nevertheless, Plaintiffs bear the burden of

proving that Defendants' conduct was willful. *Lee*, 2020 U.S. Dist. LEXIS 115467, at

---

[9] Because the Wage Act uses the same analysis as the FLSA to determine who is an employer under the Act, the individual liability applies equally to Plaintiffs' claims under the Wage Act. *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 899–900 (Ill. 2005). The same is true of the Illinois Minimum Wage Law. *Natal v. Medistar, Inc.*, 221 F. Supp. 3d 999, 1003 (N.D. Ill. 2016) (citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993)).

*17 (citing *Young Chul Kim v. Cap. Dental Tech. Lab., Inc.*, 279 F. Supp. 3d 765,

770 (N.D. Ill. 2017)). And they must still meet that burden even though Defendants

did not respond. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

In *McLaughlin v. Richland Shoe Co.*, the Supreme Court determined the

definition of willfulness under the FLSA. 486 U.S. 128, 133 (1988). The Court

rejected an argument that could allow "nothing more than negligence" to amount to

willfulness. *Id.* at 135. Instead, the Court determined that the conduct must be

voluntary, deliberate, and intentional—or the conduct must at least exhibit reckless

disregard. *Id.* at 133; *see also Sampra v. U.S. Dep't of Transp.*, 888 F.3d 330, 333–34

(7th Cir. 2018) (further focusing on the reckless disregard language in *McLaughlin*).

Plaintiffs contend that Defendants have freely admitted to violating the FLSA, and

that they should have inquired further about whether they were violating the

statute. Dkt. 167, at 14. Plaintiffs further contend that disregarding the possibility

of a FLSA violation is enough to constitute reckless disregard. *Id.* Indeed, they have

admitted to violating the statue. But just because Defendants have admitted to the

violations does not *per se* mean that the violation was done recklessly. And

Plaintiffs have proffered no evidence showing that Defendants knew they might be

violating the FLSA and disregarded that possibility. Plaintiffs' motion as to

willfulness is denied.

## III.    Conclusion

For the reasons explained above, Defendants' motion for summary judgment

[160] is denied. Plaintiffs' motion for summary judgment [166] is granted in part

19

and denied in part. Furthermore, the parties are ordered to contact Magistrate

Judge Schneider's chambers to discuss whether a settlement conference would be a

useful endeavor. If the parties are unwilling to engage in settlement discussions,

they must file a joint written status report by June 13, 2022, explaining how they

wish to proceed.


Date:  May 25, 2022

_____
    Honorable Iain D. Johnston
    United States District Judge